UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MURPHY D.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 2:22cv276 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Benefits under the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

§423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2021.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 17, 2019 through his date last insured of June 30, 2021 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairment(s): degenerative disc disease of the lumbar spine, obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can only occasionally reach overhead. The claimant can occasionally reach below waist level, but he can frequently reach in all directions at the waist and desk levels. The claimant can occasionally climb ramps and stairs, stoop, kneel, and/or crouch. The claimant can never climb ladders, ropes, or scaffolds or crawl, or work at unprotected height. The claimant can never balance, as defined in the Selected Characteristics of Occupations (SCO) defined in the revised Dictionary of Occupational Titles (DOT). Lastly, every 45 minutes, the claimant must be allowed to shift positions, or alternate between sitting and standing, for 1 to 2 minutes at a time, while remaining on task.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 14, 1983 and was 37 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 17, 2019, the alleged onset date, through June 30, 2021, the date last insured (20 CFR 404.1520(g)).

(Tr. 30-38).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed his opening brief on March 21, 2023.  On June 14, 2023 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on July 27, 2023. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present case, Step 5 was the determinative inquiry.

In support of remand, Plaintiff argues that the ALJ erred in formulating the RFC. The ALJ found Plaintiff had the RFC to perform sedentary work with an allowance to alternate between sitting and standing, for 1 to 2 minutes, every 45 minutes, while remaining on-task. (Tr. 32.) When an ALJ assesses a claimant's RFC, he is required to be specific about how the evidence in the record supports the ultimate limits the ALJ included, building a logical analytical bridge to allow a reviewer to trace his path of reasoning from the evidence to conclusions. SSR 96-8p19 ("RFC assessment

must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) ...."); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (RFC assessment cannot stand where ALJ failed to identify medical evidence to substantiate his conclusion).

Plaintiff argues that, here, the ALJ did not explain his sit/stand limitation. A reviewing physician, Dr. Kabaei, opined Plaintiff could sit 45 minutes at one time, for a total of 6 hours in an 8-hour workday. (Tr. 332.) The ALJ found Dr. Kabaei's opinions, generally, partially persuasive. (Tr 35.) The ALJ indicated that he included similar limits, despite no clinician noting that Plaintiff shifted positions or that Plaintiff was in acute painful distress. The ALJ also indicated that lack of such findings eroded Plaintiff's statements about his symptoms. (*Id.*)

However, Plaintiff testified he constantly shifted positions, and even when sitting he shifted his weight to his right to take pressure off the left side of his body. He testified he could only sit about 2 to 3 minutes. (Tr. 72.) At that point he had been in physical therapy for 2 months. At the beginning of physical therapy, he had reported he could only sit 1 to 2 minutes at a time. (Tr. 916.) The ALJ appears to have adopted the limit that Plaintiff could sit 45 minutes at one time, from Dr. Kabaei, but, Dr. Kabaei did not offer an opinion about how long Plaintiff would need to shift positions before he could resume sitting for another 45 minutes. Since the ALJ also did not adopt Plaintiff's reports about his problems sitting and needing to shift positions, the record is silent on how the ALJ reached the conclusion that Plaintiff only needed to shift positions for 1 to 2 minutes before sitting another 45 minutes. Clearly, the ALJ's failure to explain his sit/stand limits, with evidence from the record as support, renders his RFC finding not supported by substantial evidence and warrants remand. On remand, the ALJ must, of course, consider the combined effect of all of Plaiintiff's impairments, including his obesity and sleep issues.

Plaintiff also claims error because the ALJ did not include any limits in Plaintiff's ability to handle or finger and did not explain that omission. Plaintiff reported pain in his right hand (Tr. 758) and fingers (Tr. 711). He had numbness and tingling in his right hand and right 3rd, 4th, and 5th fingers (Tr. 335; 712; 859). He reported weakness (Tr. 328; 601) and clumsiness (Tr. 328) with his right hand. During examinations, he had decreased sensation over his right 3rd, 4th, and 5th fingers. (Tr. 329.) He demonstrated weakness, including grip strength. (Tr. 329; 596; 602.) He had a positive Tinel's sign. (Tr. 329.) EMG studies showed right carpal tunnel syndrome and possible early carpal tunnel syndrome, respectively. (Tr.329; 674.) Plaintiff's doctor suspected Plaintiff also had cubital tunnel syndrome, despite negative provocative tests for the condition and lack of evidence of that condition on EMG. (Tr. 713.) Plaintiff has been diagnosed with right carpal tunnel syndrome (Tr. 711), right ulnar neuritis (Tr. 337), and ulnar neuropathy of the right upper extremity (Tr. 329; 711). The ALJ found Plaintiff's "possible" or "slight" right carpal tunnel syndrome was non-severe. (Tr. 31.)

The ALJ found that despite Plaintiff's reported neurologic dysfunction in his right upper extremity, electromyography (EMG) testing was questionable, and Plaintiff's doctor noted mild abnormalities and Dr. Okolocha returned Plaintiff to work without upper extremity limitation. (Tr. 31.) However, Plaintiff's specialists noted that despite the findings on EMG, which the doctor noted showed mild carpal tunnel syndrome, he still felt Plaintiff suffered from cubital tunnel syndrome and still diagnosed Plaintiff with ulnar neuropathy and neuritis. (Tr. 329; 337; 713.) The ALJ is not a physician and is not permitted to substitute his judgment about what condition the EMG testing supported, over the opinions of Plaintiff's treating doctor's opinions. *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (ALJ must rely on expert opinions instead of determining the significance of particular medical findings themselves).

The ALJ indicated that notes referenced hand weakness or numbness, but no neurologic deficits were noted in March 2020, and no clinician documented objective upper extremity dysfunction after that. (Tr. 31.) However, when Plaintiff re-started treatment, in May 2021, his treatment was limited to follow-up with his primary care doctor, Dr. Okolocha and physical therapy focused on Plaintiff's back.

Even if the ALJ was correct that Plaintiff's carpal tunnel syndrome was non-severe, he was still required to consider the limits the condition caused on Plaintiff's ability to perform basic work related tasks. 20 C.F.R. § 404.1545 (all impairments must be considered, "even those that are not severe," when determining RFC); SSR 96-8p (ALJ must consider limitations and restrictions imposed by all of the claimant's impairments, including non-severe impairments); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). Plaintiff testified that he had difficulty using his right hand. He reported almost no grip strength, and three fingers were completely numb. (Tr. 57; 63.). The ALJ was not permitted to ignore that entire line of evidence. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

For all of the above reasons, remand is warranted.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED and REMANDED for further proceedings consistent with this Opinion.

Entered: August 7, 2023.

s/ William C. Lee
William C. Lee, Judge
United States District Court